## VAN TUYL v. QUINTON.

1. **Evidence:** DECLARATIONS: DAMAGES. A party is permitted to testify to the statements made by him to another, which were the inducement to the act of the latter, in an action to charge him with damages for the act.

2. **Instruction:** WHEN MISLEADING. An instruction is erroneous, even if it embraces correct propositions of law, which has a tendency to mislead the jury by implying that other conditions than those involved in the evidence are necessary to the determination of the case.

*Appeal from Lee District Court.*

TUESDAY, APRIL 3.

THE petition of plaintiff alleges that Frank Quinton, a minor son of and residing with the defendant, with defendant's knowledge, consent, approval and direction came on plaintiff's land, where his two sons aged thirteen and fifteen were engaged with two teams in harrowing, and wantonly, wrongfully and maliciously, twice fired a shot gun at plaintiff's dog, near the teams, killing the dog and frightening the horses, causing one of the teams, consisting of two three year old colts, to become unmanageable and run away with the harrow, whereby one of them was badly sprained, the team was rendered untrustworthy, and the harness and harrow were torn and damaged, wherefore plaintiff claims of defendant the sum of one thousand dollars.

The answer denies all the material allegations in the petition, and alleges that plaintiff's dog was worrying and killing defendant's sheep, and to prevent a repetition thereof the defendant's son Frank, without the knowledge of defendant, shot and killed plaintiff's dog.

There was a jury trial, and a verdict for plaintiff for $200. The motion for new trial was overruled, and judgment was entered upon the verdict. The defendant appeals.

*Gillmore & Anderson* and *Casey & Hobbs*, for appellant.

*Van Valkenburg & Hamilton*, for appellee.

DAY, CH. J.—I.   The farms of plaintiff and defendant adjoin.   On the day of the transaction complained of defendant

**1. EVIDENCE: declarations: damages.**   heard a dog barking in his field, and saw his cattle gathered together, and his sheep running in different directions in the pasture.   The defendant took his shot gun, one barrel of which was loaded, jumped on a pony and rode across the field to where his son Frank was running a drill in a field adjoining the pasture, and told him to take the gun, and if there was a dog worrying the sheep to shoot him. Frank got on the pony, rode in the direction of the sound of the dog, shot, and came back and told his father what he had done.   The defendant then told Frank to kill the dog.

On plaintiff's motion all the declarations of Frank with regard to shooting the dog were stricken out of the testimony of the defendant.   This was error.   The first shot was fired in defendant's field.   The subsequent shots did the injury of which complaint is made.   The pivotal question in the case is whether Frank was the agent of defendant to pursue the dog into plaintiff's field and kill him there.   The information upon which defendant acted has an important bearing upon this question.   Suppose Frank had told his father that the shot had broken all the dog's legs, and that he was thus lying where he fell.   This information would certainly have some bearing upon, and would tend to explain what was comprehended in the order to go and kill him.   This evidence is not hearsay.   The question is not whether what Frank told the defendant was true, but upon what information and under what circumstances did defendant act.   See 1 Greenleaf on Evidence, Section 101.

But whilst the exclusion of this evidence was error, we think it was error without prejudice.

Frank Quinton testified fully as to the information he conveyed to the defendant.   He says:   "As I passed by father going to the house. I told him the dog had killed one sheep and was killing another.   I told him I had wounded the dog, and asked him if I should kill him; he said 'yes.'"   It is not claimed that the defendant would have testified at all differently from this testimony of Frank, but it is said if the,

defendant's testimony had been admitted there would have been two witnesses to the fact instead of one, and that defendant is prejudiced in being restricted to one witness to a fact which he was able to prove by two. This would be true if there was any conflict in the testimony respecting the fact, or any impeachment of the remaining witness. In this case there was no such conflict, and no impeachment. The fact was proved by one credible witness, and was not contradicted. The jury had no right to disregard the testimony of Frank, and we must presume that they performed their duty and accepted this testimony as true.

II. The defendant testified as follows: "I said to Frank that if Van Tuyl's dog was lying wounded where he shot him to load the gun again and go and kill him. He was lying there a few rods from where he shot him in the first place. It was my belief that the dog was a few rods from where he was wounded. I supposed the dog to be wounded in my pasture where the sheep was. I told Frank to load the gun and kill the dog where he was lying."

*2. INSTRUCTION: when misleading.*

The testimony of Frank Quinton in substance is that he went to the house and loaded both barrels of the gun and returned to where the dog lay down when first shot. When he came within sixty or seventy yards of the dog he got up and crossed over into plaintiff's field in the direction of plaintiff's house. Frank took a rider off the fence, jumped the pony over, followed the dog into plaintiff's field, and shot him twice, the last shot killing him. Plaintiff's team took fright and ran away.

The court instructed as follows: "If you find from the evidence that the defendant instructed his son to shoot the dog on his own land for worrying sheep, and his said son so understood him, and said son purposely and maliciously, with the design to gratify his own desire and passion or ill will, disregarded his father's instructions and against his father's will went on plaintiff's land and caused the injuries complained of, then defendant will not be liable in this action, and your verdict should be for defendant." The giving of this instruction is assigned as error. It is very certain that if all these things

were found to exist the verdict should be for defendant. It is equally true that if a part of the things enumerated were found to exist the verdict should be for the defendant. The error of the instruction is not ·in its misstatement of a legal proposition, but in its tendency to mislead. The instruction undertakes to state the condition ·under which defendant would not be liable. It is true the instruction does not state that no other circumstances would exonerate the defendant. But no other instruction covering this branch of the case was given, and the jury would naturally infer, or at least might infer, that a concurrence of all these circumstances was necessary before defendant could be exonerated. In other words the jury may have inferred that if Frank simply *purposely disregarded his father's instructions and went on plaintiff's land and caused the injuries complained of against his father's will,*. the father would be liable, and that to remove the father's liability Frank must have disregarded instructions *maliciously, with design to gratify his own desire, or passion or ill will.*

If Frank purposely disregarded his father's instructions, the motives which may have actuated him thereto are immaterial. We think the defendant may have been prejudiced by this instruction..

III. A clerical error occurred in the 9th instruction in the use of the word "defendant" for "plaintiff." As the cause is reversed on other grounds, it is not necessary to determine whether this mistake worked any prejudice. We do not, at present, discover any other material or prejudicial error. For the error in the fifth instruction the cause is

REVERSED.